UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

| | |
|---|---|
| MARTHA ANN ADAMS, | ) |
| BECKY ALLERHEILIGEN, | )  No. _____ |
| DICK AND ANITA ANDERSON, | ) |
| BRENDA ARCHER, | )  JURY DEMAND |
| TERESA RUDD, | ) |
| AUTUMN BROWN, | ) |
| ANDREA MCDOWELL, | ) |
| JOSEPH E. BARLEY, Deceased, by | ) |
| next of kin, Sue B. Dell, | ) |
| BERNARD & MARY BEDGOOD, | ) |
| NEAL AND DIANE BERNEY, | ) |
| WILLIAM DOUG BLACKMAN, | ) |
| DON BOLAND, | ) |
| JANICE H. BOUNDS, | ) |
| SARA A. BROOKS, | ) |
| HERBERT M. AND SHIRA BRYSON, | ) |
| CLIFFORD AND RUTH BURTRAM, | ) |
| DAVID AND CAROLYN BYRD, | ) |
| JOHN CALDWELL, | ) |
| YVONNE W. CHAPPELL, | ) |
| JOYCE COBB, | ) |
| SUE COGLE, | ) |
| JESSIE AND WILLIAM COOPER, | ) |
| GLADYS COPELAND, | ) |
| JAMES CRABTREE, | ) |
| KENNETH AND BETTYE CROSBY, | ) |
| JOHN AND PATRICIA CUMMINS, | ) |
| GENE AND JUNE DUCOTE, | ) |
| BARBARA FAIRCLOTH, | ) |
| SARA FARLEY, | ) |
| MAGARET FREELY, | ) |
| BILL AND PAULA GODWIN, | ) |
| JAMES AND BETTY GOREE, | ) |
| ANNIE LOIS GRAY, | ) |
| ELEANOR GUTKOWSKI, | ) |
| JOHN AND BRENDA HALL, | ) |
| LLOYD AND VANKA HAYES, | ) |
| SHARON HELMS, | ) |
| ALLEN AND ANN HENDERSON, | ) |
| STEVE HERMAN, | ) |
| TRUMAN HORNSBY, | ) |

JOHN AND TRACY HOWLEY,                    )
RUBY LEE JOHNSON,                         )
STEVE AND AVEN JOHNSTON,                  )
PYRON KEENER,                             )
SUZNNE KEENER VARGAS,                     )
CAROL KEENER BUSH,                        )
WALTER AND JOAN KIRK,                     )
HUGH AND ALICE LANGDALE,                  )
DONALD AND JUNE LOLLEY,                   )
PAUL AND SANDRA MARUSICH,                 )
LAURA MAY,                                )
MATTI P. MCCARTER,                        )
JOHN AND RUTH MILLER,                     )
JOHN AND CAMERON NAPIER,                  )
BILLIE NELSON,                            )
J. BRITT NORMAN,                          )
ANNA L. TERRELL,                          )
ANN OAKLEY,                               )
HOYT PAINTER,                             )
MILO AND JOYCE PEARSON,                   )
MARY PHARES,                              )
EMMITT PITTS,                             )
BILL AND MARGARET POAGE,                  )
GUS AND KIKI POLIZOS,                     )
DOROTHY PRESCOTT,                         )
BEVERLY AND LARRY PUCKETT,                )
ALBERT & BETTY REDDING,                   )
KENNETH RENFROE,                          )
MARY AND WILBUR RICHARDSON,               )
DOROTHY RIKERD,                           )
BILL S. RINGLER,                          )
WALLANCE AND LINDA SEALS,                 )
ANNE G. SEARCY,                           )
BILL SHADBURN,                            )
JANE ANN SHANNON,                         )
KAREN NAYLOR,                             )
CHARLES AND ETHEL SMITH,                  )
GEORGIA SMITH,                          )
JUDY H. SOLOMON,                          )
JEAN AND WENDELL SPEEGLE,                 )
W.L. AND PEGGY STRUTHERS,                 )
E. CLARK SUMMERFORD,                      )
EMMA F. SUTTON,                           )
CHARLOTTE TATE,                           )
CHARLES AND MARTHA THORNTON,              )
PHILLIP THORNTON,                         )

REBECCA AND AARON TRIMBLE,                )
KIM HUGHES, POA for GINGER                )
H. UPTON,                                 )
JOHN AND SANDRA WHORTON,                  )
BECKY LYNN WILLIAMS,                      )
W.J. AND MATTIE WILLIAMS,                 )
BILLY AND MURLENE WILLIAMSON,             )
JOE AND DIANNA WILSON,                    )
MARGUERITE M. WOOD,                       )
THOMAS C. WOODLING,                       )
BETTY M. WRIGHT,                          )
ELEANOR WRIGHT,                           )
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )
                                          )
MORGAN ASSET MANAGEMENT, INC.,            )
REGIONS FINANCIAL CORPORATION,            )
MK HOLDING, INC.,                         )
REGIONS FINANCIAL CORP.,                  )
CARTER E. ANTHONY,                        )
ALLEN B. MORGAN, JR.,                     )
JOSEPH C. WELLER,                         )
JAMES STILLMAN R. MCFADDEN,               )
ARCHIE W. WILLIS, III,                    )
MARY S. STONE,                            )
W. RANDALL PITTMAN,                       )
J. KENNETH ALDERMAN,                      )
J. THOMPSON WELLER,                       )
CHARLES D. MAXWELL,                       )
JAMES C. KELSOE, JR.,                     )
DAVID H. TANNEHILL,                       )
WILLIAM JEFFRIES MANN,                    )
JAMES D. WITHERINGTON,                    )
R. PATRICK KRUCZEK,                       )
JACK R. BLAIR,                            )
ALBERT C. JOHNSON,                        )
MICHELE F. WOOD,                          )
BRIAN B. SULLIVAN,                        )
RMK MULTI-SECTOR HIGH INCOME              )
FUND, INC., REGIONS MORGAN                )
KEEGAN SELECT FUNDS, INC.,                )
INC., and                                 )
PRICEWATERHOUSECOOPERS LLP,               )

3

Defendants.                              )

---

**COMPLAINT**

---

## I. <u>INTRODUCTION</u>

1.    Each of the plaintiffs in this action lost money in investments they made during the period December 7, 2004 through December 31, 2007 in one or more of three income funds operated, managed, underwritten, and/or sold by defendants: the Regions Morgan Keegan Select High Income Fund, the Regions Morgan Keegan Select Intermediate Bond Fund, and the RMK Multi-Sector High Income Fund (collectively, the "Funds").

2.    The prospectuses and registration statements filed with respect to the Funds contained misleading statements and failed to disclose numerous material facts.

3.    Plaintiffs bring this action under the Securities Act of 1933 to recover the losses they sustained as a result of defendants' misconduct.

4.    Plaintiffs' claims against defendants arise from the same series of transactions and occurrences and raise common questions of law and facts.

## II. <u>PARTIES</u>

### A. <u>Plaintiffs</u>

5.      Plaintiff Martha Ann Adams is a resident of Alabama.

6.      Plaintiff Becky Allerheiligen is a resident of Alabama.

7.      Plaintiffs Dicky and Anita Anderson are residents of Alabama.

8.      Plaintiff Brenda Archer is a resident of Alabama.

9.      Plaintiff Teresa Ruud is a resident of Florida.

10.     Plaintiff Autumn Brown is a resident of Florida.

11.     Plaintiff Andrea McDowell is a resident of Georgia.

12.     Plaintiff Joseph E. Barley, Deceased, by next of kin, Sue B. Dell is a resident of Alabama.

13.     Plaintiffs Bernard and Mary Bedgood are residents of Alabama.

14.     Plaintiffs Neal and Diane Berney are residents of Alabama.

15.     Plaintiff William Doug Blackman is a resident of Alabama.

16.     Plaintiff Don Boland is a resident of Alabama.

17.     Plaintiff Janice H. Bounds is a resident of Alabama.

18.     Plaintiff Sara A. Brooks is a resident of Alabama.

19.     Plaintiffs Herbert M. and Shira Bryson are residents of Alabama.

20.     Plaintiffs Clifford and Ruth Burtram are residents of Alabama.

21.     Plaintiffs David and Carolyn Byrd are residents of Alabama.

22.     Plaintiff John Caldwell is a resident of Alabama.

23.     Plaintiff Yvonne W. Chappell is a resident of Alabama.

24.     Plaintiff Joyce Cobb is a resident of Alabama.

25.     Plaintiff Sue Cogle is a resident of Alabama.

26.   Plaintiffs Jessie and William Cooper are residents of Alabama.

27.   Plaintiff Gladys Copeland is a resident of Alabama.

28.   Plaintiff James Crabtree is a resident of Alabama.

29.   Plaintiffs Kenneth and Bettye Crosby are residents of Alabama.

30.   Plaintiffs John and Patricia Cummins are residents of Alabama.

31.   Plaintiffs Gene and June Ducote are residents of Alabama.

32.   Plaintiff Barbara Faircloth is a resident of Alabama.

33.   Plaintiff Sara Farley is a resident of Alabama.

34.   Plaintiff Margaret Feeley is a resident of Alabama.

35.   Plaintiffs Bill and Paula Godwin are residents of Alabama.

36.   Plaintiffs James and Betty Goree are residents of Alabama.

37.   Plaintiff Annie Lois Gray is a resident of Alabama.

38.   Plaintiff Eleanor Gutkowski is a resident of Alabama.

39.   Plaintiffs John and Brenda Hall are residents of Alabama.

40.   Plaintiffs Lloyd and Vanka Hayes are residents of Alabama.

41.   Plaintiff Sharon Helms is a resident of Alabama.

42.   Plaintiffs Allen and Ann Henderson are residents of Alabama.

43.   Plaintiff Steve Herman is a resident of Alabama.

44.   Plaintiff Truman Hornsby is a resident of Alabama.

45.   Plaintiffs John and Tracy Howley are residents of Alabama.

46.   Plaintiff Ruby Lee Johnson is a resident of Alabama.

47.   Plaintiffs Steve and Aven Johnston are residents of Alabama.

48.   Plaintiff Pyron Keener is a resident of Alabama.

49. Plaintiff Suzanne Keener Vargas is a resident of Alabama.

50. Plaintiff Carol Keener Bush is a resident of Alabama.

51. Plaintiffs Walter and Joan Kirk are residents of Alabama.

52. Plaintiffs Hugh and Alice Langdale are residents of Alabama.

53. Plaintiffs Donald and June Lolley are residents of Alabama.

54. Plaintiffs Paul and Sandra Marusich are residents of Alabama.

55. Plaintiff Laura May is a resident of Alabama.

56. Plaintiff Mattie P. McCarter is a resident of Alabama.

57. Plaintiffs John and Ruth Miller are residents of Alabama.

58. Plaintiffs John and Cameron Napier are residents of Alabama.

59. Plaintiff Billie Nelson is a resident of Alabama.

60. Plaintiff J. Britt Norman is a resident of Alabama.

61. Plaintiff Anna L. Terrell is a resident of Alabama.

62. Plaintiff Ann Oakley is a resident of Alabama.

63. Plaintiff Hoyt Painter is a resident of Alabama.

64. Plaintiffs Milo and Joyce Pearson are residents of Alabama.

65. Plaintiff Mary Phares is a resident of Alabama.

66. Plaintiff Emmitt Pitts is a resident of Alabama.

67. Plaintiffs Bill and Margaret Poage are residents of Alabama.

68. Plaintiffs Gus and Kiki Polizos are residents of Alabama.

69. Plaintiff Dorothy Prescott is a resident of Alabama.

70. Plaintiffs Beverly and Larry Puckett are residents of Alabama.

71. Plaintiffs Albert and Betty Redding are residents of Alabama.

72.  Plaintiff Kenneth Renfroe is a resident of Alabama.

73.  Plaintiffs Mary and Wilbur Richardson are residents of Alabama.

74.  Plaintiff Dorothy Rikerd is a resident of Alabama.

75.  Plaintiff Bill S. Ringler is a resident of Alabama.

76.  Plaintiffs Wallace and Linda Seals are residents of Alabama.

77.  Plaintiff Anne G. Searcy is a resident of Alabama.

78.  Plaintiff Bill Shadburn is a resident of Alabama.

79.  Plaintiff Jane Ann Shannon is a resident of Alabama.

80.  Plaintiff Karen Naylor is a resident of Alabama.

81.  Plaintiffs Charles and Ethel Lee Smith are residents of Alabama.

82.  Plaintiff Georgia Smith is a resident of Alabama.

83.  Plaintiff Judy H. Solomon is a resident of Alabama.

84.  Plaintiffs Jean and Wendell Speegle are residents of Alabama.

85.  Plaintiffs W.L. and Peggy Struthers are residents of Alabama.

86.  Plaintiff E. Clark Summerford is a resident of Alabama.

87.  Plaintiff Emma F. Sutton is a resident of Alabama.

88.  Plaintiff Charlotte Tate is a resident of Alabama.

89.  Plaintiffs Charles and Martha Thornton are residents of Alabama.

90.  Plaintiff Phillip Thornton is a resident of Alabama.

91.  Plaintiffs Rebecca and Aaron Trimble are residents of Alabama.

92. Plaintiff Kim Hughes, POA for Ginger H. Upton is a resident of Alabama.

93. Plaintiffs John and Sandra Whorton are residents of Alabama.

94. Plaintiff Becky Lynn Williams is a resident of Alabama.

95. Plaintiffs W.J. and Mattie Williams are residents of Alabama.

96. Plaintiffs Billy and Murlene Williamson are residents of Alabama.

97. Plaintiffs Joe and Diana Wilson are residents of Alabama.

98. Plaintiff Marguerite M. Wood is a resident of Alabama.

99. Plaintiff Thomas C. Woodling is a resident of Alabama.

100. Plaintiff Betty M. Wright is a resident of Alabama.

101. Plaintiff Eleanor Wright is a resident of Alabama.

## B. **Defendants**

102. Defendant Morgan Asset Management, Inc. ("MAM"), is a registered investment adviser that managed and advised the Funds at all times relevant herein.  MAM is headquartered in Birmingham, Alabama, with a principal office in Memphis, Tennessee and is a wholly owned subsidiary of MK Holding, Inc.  MAM charged the Funds management fees based on the average daily net assets of the Funds.

103. Defendant MK Holding, Inc. ("MK Holding"), is a wholly-owned subsidiary of Regions Financial Corporation.

104. Defendant Regions Financial Corp. ("Regions"), a Delaware

corporation, is a regional financial holding company (NYSE: RF). The Funds' shares were marketed, offered and sold by and through subsidiaries and trust departments of subsidiaries owned or controlled by Regions.

105. Defendant Allen B. Morgan, Jr. ("Morgan"), was, during the time period relevant to plaintiffs' claims, a director of one or more of the Funds. He also served as a Director of MAM, and Chairman and Executive Managing Director of Morgan Keegan. Defendant Morgan signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

106. Defendant Carter E. Anthony ("Anthony") was, during times relevant to plaintiffs' claims, a director and officer of one or more of the Funds. Additionally, Anthony was President and Chief Investment Officer of MAM. Mr. Anthony signed one or more of the registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to this case and/or with respect to which plaintiffs can trace their purchases in the Funds,

107. Defendant Joseph C. Weller ("Weller") co-founded Morgan Keegan. Weller was Vice Chairman of Morgan Keegan and Treasurer of the Funds until November 2006. Weller also served as Chief Financial Officer ("CFO") of Morgan Keegan and was during the time period relevant to plaintiffs' claims an officer of one or more of the Funds. Defendant Joseph

Weller signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

108. Defendant James Stillman R. McFadden ("McFadden") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant McFadden signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

109. Defendant Archie W. Willis, III ("Willis") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Willis signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

110. Defendant Mary S. Stone ("Stone") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Stone signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

111. Defendant W. Randall Pittman ("Pittman") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Pittman signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

112. Defendant J. Kenneth Alderman ("Alderman") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Mr. Alderman has been CEO of MAM since 2002. Defendant Alderman signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

113. Defendant J. Thompson Weller ("JT Weller") is, and at all relevant times was, Managing Director and Controller of Morgan Keegan. Defendant JT Weller signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

114. Defendant Brian B. Sullivan ("Sullivan") has served as President and Chief Investment Officer of MAM since 2006.

115. Defendant Charles D. Maxwell ("Maxwell") has served as Executive Managing Director, CFO, Treasurer and Secretary of Morgan

Keegan since 2006.  Defendant Maxwell signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

116.  Defendant James C. Kelsoe, Jr. ("Kelsoe") is, and at all relevant times Senior Portfolio Manger of the Funds and of MAM and a controlling person of the Funds.

117.  Defendant David H. Tannehill ("Tannehill") is and was during the time period relevant to plaintiffs' claims the Portfolio Manager of the Funds and of MAM and a controlling person of the Funds.

118.  Defendant Michele F. Wood ("Wood") is, and at all relevant times was, Chief Compliance Officer and Senior Vice President of MAM.

119.  Defendant Jack R. Blair ("Blair") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Blair signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

120.  Defendant Albert C. Johnson ("Johnson") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Johnson signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the

time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

121.  Defendant William Jeffries Mann ("Mann") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Mann signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

122.  Defendant James D. Witherington, Jr. ("Witherington") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.   Defendant Witherington signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

123.  Defendant R. Patrick Kruczek ("Kruczek") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds. Defendant Kruczek signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

124.  The defendants referred to in ¶¶ 105-134 above are referred to herein as the "Individual Defendants."

14

125.  Defendant Regions Morgan Keegan Select Funds, Inc. ("Select Funds, Inc.") is an open-end management investment company incorporated under the laws of Maryland.  During all times relevant hereto, Select Funds, Inc. owned and operated the Regions Morgan Keegan Select High Income Fund and the Regions Morgan Keegan Select Intermediate Bond Fund.

126.  Defendant RMK Multi-Sector High Income Fund, Inc. ("Multi-Sector Fund, Inc.") is a closed-end management investment company incorporated under the laws of Maryland.  During all times relevant hereto, Select Funds, Inc. owned and operated the RMK Multi-Sector High Income Fund.

127.  Defendant PricewaterhouseCoopers, LLP ("PWC"), a limited liability partnership, is a national public accounting and auditing firm that does business in Tennessee.  During all times relevant to this case, PWC audited the Funds' annual financial statements, reviewed the Fund's semi-annual financial statements, issued reports on the Funds' internal controls, and reviewed the Funds' prospectuses and each amendment thereto and affirmed the financial information therein to the extent that such information was derived from the Funds' audited financial statements.  At all relevant times, PWC held itself out as possessing special expertise in the auditing of financial statements of, and the management of, registered investment companies such as the Funds.

128. Defendants either participated, directly or indirectly, in the wrongful conduct alleged herein; combined to engage in the wrongful transactions and dealings alleged herein; knew, or in the exercise of reasonable care, should have known, of the misrepresentations and omissions of material facts, or recklessly caused such misrepresentations or omissions of material facts to be made; or benefited from the wrongful conduct alleged.

### III.  JURISDICTION AND VENUE

129. This Court has subject matter jurisdiction over plaintiffs' Securities Act claims pursuant to 15 U.S.C. § 77*v* and 28 U.S.C. § 1331.

130. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this judicial district.

### IV.  FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

131. During the period December 7, 2004 through December 31, 2007, the plaintiffs in this case invested in one or more of the following funds that, during all times relevant to this case, were operated, managed, underwritten, and/or sold by the defendants:

(a)    RMK Multi-Sector High Income Fund,;

(b)    Regions Morgan Keegan Select High Income Fund; and

(c)    Regions Morgan Keegan Intermediate Bond Fund,

16

132.  The funds identified in the preceding paragraph are referred to herein collectively as the "Funds."

133.  Defendants offered and sold the Funds to numerous residents of this judicial district.

## The Funds' Catastrophic Crash

134.  From the fourth quarter of 2006 through April of 2008, when defendants turned the funds over to a new portfolio manager, the Funds experienced a meltdown of unprecedented proportions, losing close to 80% of their value.  They currently trade at less then 10% of their offering prices and have no prospects for meaningfully recovery.

135.  These enormous losses were _not_ caused primarily by an economic downturn, the subprime crisis, or other general market forces. This assertion is easily confirmed by the performance of the investment indices by which the Funds measured themselves and by the performance of other funds in the high income fund category, both of which performed far better than the Funds.

136.  The astonishing meltdown of the Funds was caused by their extreme overconcentration in the riskiest tranches of structured, asset-backed securities – an investment strategy and risk not properly disclosed to potential investors.

137.  Although subprime and credit concerns in 2007 had some effect on the Funds, the magnitude of the Funds' losses was completely

outside the range of the losses, if any, experienced by other high income and intermediate income funds to which the Funds compared themselves.

138.  The disproportionate, adverse effect of economic events on the Funds could not reasonably have been foreseen or anticipated by persons investing in the Funds, in view of the Funds' misleading and incomplete disclosures.  The disproportionate effect of economic events on the Funds, however, could and should reasonably have been foreseen and anticipated by defendants, given the Funds' high concentration in a narrow sector of securities that were likely to plummet in unison in the event of a credit crunch or real estate downturn.

139.  The majority of the Funds' collapse occurred during and after a period of time in which defendants' made the following disclosures concerning problems with the Funds:

- At a shareholders meeting on July 13, 2007, defendant Kelsoe disclosed that the Funds' subprime and collateralized debt holdings were under pressure and experiencing substantial volatility.

- On August 10, 2007, defendant Kelsoe disclosed in an open letter the Funds' increasing volatility, negative price movement in the Funds' assets, and "unprecedented" problems.

- In mid-August, 2007, the Funds made several SEC filings disclosing asset illiquidity and difficulties in obtaining realistic values for some of the Funds' securities. These SEC filings also stated that the Funds were unable to file certified shareholder reports on a timely basis and had retained a valuation consultant to assist in determining the fair value of the Funds' securities.

- On October 4, 2007, Regions Morgan Keegan Select Funds, Inc., filed its annual report with the SEC.  The following day, the Wall Street Journal reported that the Regions Morgan Keegan Select

High Income and Intermediate Funds had had to value 60% and 50% of their assets, respectively, at fair value since market values were not readily available.   In connection with that article, defendant Kelsoe told the Journal that "What was an ocean of liquidity has quickly become a desert."

• On November 7, 2007, defendant Kelsoe published a letter in which he stated that "we have always invested a large portion of our portfolios in "structured finance" fixed income securities . . . . and the weakness in the portfolios relates to this area of investment."

140. Thus, the extraordinary decline in the Funds' asset values and share prices during 2007-2008 was caused by actions and omissions of the defendants and their failure to make timely and accurate disclosures to the investing public.

**Misrepresentations And Omissions In The Funds' SEC Filings**

141. The Securities and Exchange Commission ("SEC") promulgates, through its Forms N-1A and N-2, directives that open-end and closed-end management companies, respectively, must follow in the prospectuses they file with the SEC.   Form N-1 states that prospectuses filed by open-end management companies must:

"clearly disclose the <u>fundamental</u> characteristics and investment risks of the Fund, using concise, straightforward, and easy to understand language"   (emphasis supplied)

"identify the Fund's <u>principal</u> investment strategies (including the type or types of securities in which the Fund invests or will invest principally)"   (emphasis supplied)

"summarize the <u>principle</u> risks of investing in the Fund." (emphasis supplied)

19

not "disproportionately emphasize investments or activities of the Fund that are not a significant part of the Fund's investment operations"

"be designed to assist an investor in comparing and contrasting the Fund with other funds"

142.    Similarly, Form N-2 states that prospectuses filed by closed-end management companies must:

use "clear, concise, and understandable" language and include "only information needed to understand the <u>fundamental</u> characteristics" of the fund (emphasis supplied)

"concisely describe the investment objectives and policies or the Registrant that will constitute its <u>principal</u> portfolio emphasis, including . . . the types of securities in which the registrant will invest <u>principally</u>" and must "briefly describe the <u>significant</u> investment practices" the fund intends to employ (emphasis supplied)

"concisely describe the risks associated with an investment in the Registrant" and "discuss the <u>principal</u> risk factors" (emphasis supplied)

143.    At all times relevant to this case, the <u>principal</u>, <u>fundamental</u> strategy of the Funds was an unusual concentration in structured, asset-backed securities, particularly the lowest, riskiest tranches of such structured securities.  The Select High Income and Select Intermediate Bond Funds utilized this strategy from the outset.  And when the RMK Multi-Sector High Income Fund was offered in January 2006, MAM and its affiliates understood that this fund would simply continue the existing strategy.

144.    Concomitantly, the principal risk posed by an investment in the Funds was the usual risk associated with the lower tranches of structured

securities.   The income flow produced by the pool of assets backing a structured investment typically flows to the tranches in order of priority from top to bottom.  For example, an eighth tier tranche receives income only if all other tranches are fully paid.  Thus, the lower tranches, which earn more interest if things go well, have highly leveraged risks that, in bad times, may result on complete losses.

145.   In violation of SEC rules, the prospectuses and registration statements filed by the Funds failed to disclose either their principal investment strategy or the unusual, leveraged risk associated with that strategy.   The SEC filings numbed investors with an extensive laundry list of possible investments, but gave them no fair notice of what the Funds actually were doing and intended to do.

146.   No other intermediate term or high-yield bond fund invested as heavily in structured financial instruments as did the Funds in this case.  On July 19, 2007, Bloomberg News quoted defendant James Kelsoe, senior portfolio manager of the Funds, as having an "intoxication" with such securities.  Bloomberg further reported that an analyst at Morningstar, Inc., the mutual fund research firm, noted that "[a] lot of mutual funds didn't own much of this stuff" and that Kelsoe was "the one real big exception."

147.   But the Funds' SEC filings never gave investors the requisite information to assist them "in comparing and contrasting the Fund with other funds," as the SEC requires.   To the contrary, the Funds misled investors about the true nature of the Funds by comparing themselves, in

SEC filings, to a bond fund benchmark that did not include any component of structured securities.

148. In other litigation, defendants have noted that the Statement of Additional Information filed by one of the Funds included a discussion of the fact that the Funds "may" invest in "subordinated classes of senior-subordinated securities" that "are subordinated in some manner" as to payments. This disclosure clearly failed to satisfy the Funds' legal obligations. This vague, uncertain language did not fairly explain the nature and risks of the tranched investments, nor was there any explanation that this type of investment was in fact the principal strategy and concentration of the Funds. Moreover, the SEC requires that <u>principal</u> strategies and risks must be disclosed in the <u>prospectus</u>. Disclosure of principal strategies and risks only in a Statement of Additional Information, which is not routinely provided to investors, is not permissible, nor is it fair to investors.

149. It was not until an SEC filing in early March of 2008 that the Funds first made any meaningful disclosure of their principal risk – a risk that by that time had destroyed the Funds. In a semi-annual report filed by the Select Funds, management's discussion of the brutal losses sustained by the Funds included a brief statement that "the structured finance category has taken the hardest hit so far due to the implicit (*i.e.*, built into the

structures) and explicit (*i.e.*, financed, or bought on margin) leverage employed for this asset category. . . ."[1]

150.   But the Funds prospectuses and registration statement had never disclosed or explained the leveraged risk created by the Funds' concentration in structured, asset-backed securities.   To the contrary, the Select Funds' prospectuses stated that they could not employ margin leverage, and the Multi-Sector Fund's prospectuses stated that leverage would be limited to margin debt equal to no more than one-third of the Fund's net asset value.   These statements significantly misled investors about the principal risk in the Funds – the implicit leverage in the lower trances of structured securities.

151.   Thus, as set forth in the preceding paragraphs, each of the prospectuses and registration statements pursuant to which the Funds were sold to the public during the time period relevant to this case contained material misrepresentations and/or failed to disclose material facts concerning the Funds' principal investment strategy and risk.   In addition, the Funds' prospectuses and registration statements also failed to disclose a number of other material facts, including the following:

(a)   The structured investments in which the Funds were concentrating their investments were not actively traded and were less liquid that many other types of securities;

---

[1]   This statement was presumably confused in its reference to margin debt, which the Select Funds were not allowed to use.

(b)     The substantial illiquidity of the Funds meant that in the event of a forced sale assets would quite likely bring far less than the prices at which they were valued by the Funds;

(c)     The substantial illiquidity of the Funds also meant that if it became necessary for the Funds to sell assets, either because of shareholder liquidations or margin calls, the manager would likely have to sell first the few lower-risk, liquid assets held by the Funds, thus penalizing those who remained in the Funds;

(d)     The three Funds at issue in this case, plus three other closed-end funds managed by MAM were all pursuing the same investment strategy and investing in the same or similar securities.  This greatly exacerbated the difficulty of selling assets at reasonable prices in the event of a forced liquidation;

(e)     Investors in the Multi-Sector Fund were not told that in the event that redemptions in the Select Funds necessitated asset sales at prices below presumed market value, the Multi-Sector Fund would have to mark down the value of similar assets it held; and

(f)     Similarly, Select Fund investors were not told that in the event that margin calls in the Multi-Sector Fund necessitated asset sales at low prices, the Select Funds would have to mark down the value of similar assets it held; and

152.   In addition, the Funds were presented to the investing public as different funds that employed different investment strategies.  In truth,

however, they were managed almost identically, with highly similar asset allocations and individual securities holdings. This reality was not disclosed in the registration statements and prospectuses filed by the Funds.

153. Because of their highly correlated portfolios, investors who purchased more than one of the Funds assuming they were thereby diversifying and reducing overall risk, were in fact not doing so. This fact was not disclosed in the registration statements and prospectuses filed by the Funds.

154. Also, the registration statements and prospectuses filed by the Funds represented that they would invest in a wide range of securities, which would contribute to a more stable net asset value, would not invest more than 25% of its total assets in the securities of companies in the same industry, and would pursue a value investing strategy. These statements were misleading in view of the fact that the Funds were concentrated and intended to concentrated far beyond 25% in new issues in one sector of the securities industry.

155. In addition, the prospectuses and registration statements filed with respect to the Morgan Keegan Select High Income and Intermediate Funds stated that these Funds would not invest more than 15% of their assets in illiquid securities. In 2006 and 2007, these Funds substantially violated this investment restriction. This fact was not disclosed in the Funds' prospectuses.

## PRICEWATERHOUSE COOPERS, LLP

156.    PWC, a firm of certified public accountants, was engaged by the Funds to provide independent auditing and accounting services.  PWC provided auditing services to the Funds before and during the Class Period and certified financial statements in registration statements and prospectuses that were filed with the SEC by each of the Funds and operative during the Class Period.

157.    In connection with its audit and review of the Funds' finances and operations, PWC had comprehensive access to information in the Funds' books and records and communicated regularly with management of the Funds and Morgan Management.

158.    PWC reviewed the quarterly and year-end results of the Funds, advised and/or opined upon the accuracy and bona fides of the Funds' financial filings and had intimate knowledge of the nature of the Funds' business and operations.  PWC also advised the Funds with respect to internal financial and accounting controls.

159.    As a result of its intimate knowledge of the Funds' business and operations, PWC knew or should have known that the Funds were not properly discounting the "fair value" of their substantial illiquid holdings and that their financial statements were therefore overstated, inaccurate, and misleading.

160.    PWC consented to the inclusion of its unqualified opinions on the Funds' financial statements during the Class Period, including their

annual reports filed with the SEC on June 6, 2005, June 7, 2006, and June 6, 2007, which reports PWC knew, or should have known, were materially false.

161.   Significantly, in PWC's October 3, 2007 letter opining on the fairness of the June 30, 2007 financial statement of the similarly managed Regions Morgan Keegan Select Funds, PWC added an important disclaimer about the funds' valuation process notably absent from PWC's earlier certifications.   In this letter, PWC stated as follows:

> As explained in Notes 2 and 9, the financial statements include securities valued at $26,065,956 (29 percent of net assets), $514,922,503 (51 percent of net assets) and $624,867,802 (59 percent of net assets) of Regions Morgan Keegan Select Short Term Bond Fund, Regions Morgan Keegan Select Intermediate Bond Fund and Regions Morgan Keegan Select High Income Fund, respectively, whose fair values have been estimated in good faith by Morgan Asset Management, Inc.'s Valuation Committee under procedures established by the Funds' Board of Directors in the absence of readily ascertainable market values. However, these estimated values may differ significantly from the values that would have been used had a ready market for the securities existed, and the differences could be material. (emphasis added)

162.   PWC knew or should have known, and should have disclosed, that this very problem existed with respect to other statements filed by the Funds during earlier periods.

163.   Furthermore, under Statement of Accounting Standards 73, PWC, which had insufficient expertise to assess the "fair value" of the illiquid and complex holdings in which the Funds had heavily invested, should have retained an independent specialist to assist in evaluating the

value of these holdings.

164.  Had PWC performed its audits in conformance with applicable accounting standards, the deterioration in the value of the Funds' investments would have been evident.  It would have been evident to PWC that the Funds' financial statements and associated information were materially false and misleading.  Nevertheless, PWC provided unqualified opinions that the Funds' financial statements were valid and accurate.

165.  PWC's failure to adequately perform its audit procedures, to identify the improprieties alleged herein, and to report the problems, permitted the accounting irregularities and improprieties to continue, leading to false and misstated financial statements.

## V.  LEGAL CLAIMS

### COUNT ONE – VIOLATION OF SECTION 11 OF SECURITIES ACT

166.  Plaintiffs incorporate ¶¶ 1-173 by reference.

167.  The registration statements by which the Funds were offered to plaintiffs, or to those investors from whom plaintiffs acquired their shares, were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

168.   The   defendants   were   persons   who   signed   the   Funds'
registration  statements,  were  directors  or  persons  or  entities  performing
similar functions for the issuers, or underwriters of the Funds.

169.   None   of   the   defendants   named   herein   made   a   reasonable
investigation   or   possessed   reasonable   grounds   to   believe   that   the
statements contained in the Funds' registration statements were true and
without omissions of material facts and not misleading. Defendants could
have, with the exercise of reasonable care, become aware of the misleading
nature of the registration statements.

170.   Through the conduct alleged above, each defendant violated, is
liable under, or controlled a party who is liable under §11 of the Securities
Act.

171.   Plaintiffs  acquired  shares  of  the  Funds  during  the  period  in
which defendants' misleading registration statements were in effect.   The
shares  purchased  by  plaintiffs  were  bought  pursuant  to  defendants'
registration statements or are traceable to such registration statements.

172.   Plaintiffs have been damaged and are entitled to all relief from
defendants permitted by § 11 of the Securities Act.

173.   At the times plaintiffs purchased their Funds shares, they did
not  know  and  could  not  reasonably  have  known  of  the  misleading
statements, omissions, and misconduct set forth above.   Less than one year
has elapsed from the time that plaintiffs discovered, and could reasonably
have discovered, the misconduct giving rise to this case.

## **COUNT TWO – VIOLATION OF SECTION 12 OF SECURITIES ACT**

174.   Plaintiffs incorporate ¶¶ 1- 173 by reference.

175.   Defendants were sellers, offerors, and/or solicitors with respect to the investments in the Funds made by plaintiffs.

176.   The Individual Defendants participated in the preparation of the prospectuses filed with respect to the Funds.

177.   The prospectuses by which the Funds were offered to plaintiffs and others were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

178.   Defendants could have, with the exercise of reasonable care, become aware of the misleading nature of the Funds' prospectuses.

179.   Through the conduct alleged above, defendants violated, are liable under, or controlled a party who is liable under §12a(2) of the Securities Act.

180.   For the same reasons, the mutual fund companies that issued and sold shares in the Funds violated §12a(2) of the Securities Act.  These fund companies are Morgan Keegan Select Fund, Inc. and RMK Multi-Sector High Income Fund, Inc. and RMK Strategic Income Fund, Inc.

181.   Plaintiffs acquired shares of the Funds from the issuers during the time when defendants' misleading prospectuses were in effect.

182.  Plaintiffs have been damaged and are entitled to all relief from defendants permitted by § 12a(2) of the Securities Act.  Those plaintiffs who still own their shares of the Funds hereby tender shares to defendants.

183.  At the times plaintiffs purchased their Funds shares, they did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set forth above.  Less than one year has elapsed from the time that plaintiffs discovered, and could reasonably have discovered, and the filing of a number of class action cases in this Court that tolled the running of the statute of limitations with respect to plaintiffs' claims.

**COUNT THREE – VIOLATION OF SECTION 15 OF SECURITIES ACT**

184.  Plaintiffs incorporate ¶¶ 1-192 by reference.

185.  Defendants were control persons of the Funds and/or Fund Companies by virtue of their positions as directors or senior officers of the Funds and/or by virtue of their relationships with the Funds.  These defendants exercised control over the general affairs of the Funds and/or Fund Companies and had the power to control the conduct giving rise to plaintiffs' claims.

186.  Defendants are therefore liable for the Securities Act violations alleged in Counts One and Two above.

THEREFORE, plaintiffs respectfully request that the Court:

31

1.      Grant judgment in favor of plaintiffs and against defendants, jointly and severally, for rescissionary damages or other appropriate compensatory damages, including prejudgment interest;

2.      Order the disgorgement by defendants of all fees earned with respect to the investments improperly sold to plaintiffs;

3.      Award plaintiffs reasonable attorney's fees;

4.      Afford plaintiffs a trial by jury; and

5.      Provide such further legal or equitable relief as the Court deems to be just.

Respectfully submitted,

/s/ H. Naill Falls Jr.
H. Naill Falls Jr., BPR #6787
John B. Veach III, BPR #8994
FALLS  & VEACH
1143 Sewanee Rd.
Nashville, TN 37220
615/242-1800

Attorneys for Plaintiffs

Of counsel:

Charles M. Thompson
Attorney at Law
5615 Canongate Lane
Birmingham, Alabama 35242